Tashima **WILLIAMS**, Marsha Monterio Wanda Small and Mikhail Tsyrkin, Individually and on behalf of all persons similarly situated, Plaintiffs,

v.

The **HANOVER HOUSING AUTHORITY**, and Kevin Donovan, in his official capacity as Director of the Hanover Housing Authority, and The Danvers Housing Authority, and Melody Kriteman, in her official capacity as Director of the Danvers Housing Authority and The Arlington Housing Authority, and Jeremiah Donovan, in his official capacity as Director of the Arlington Housing Author-

ity and, **Henry Cisneros, Secretary of the United States Department of Housing and Urban Development, and Mary Padula, Secretary of the Massachusetts Executive Office of Communities and Development, Defendants.**

**Civil Action No. 93–10964–WGY.**

United States District Court, D. Massachusetts.

April 30, 1996.

---

Judith Liben, Boston, MA, Henry Korman, Cambridge, MA, for plaintiffs.

Marsha Donovan, Danvers, MA, for Danvers Housing Authority.

Bernard M. Ortwein, Boston, MA, for Arlington Housing Authority.

## MEMORANDUM AND ORDER

YOUNG, District Judge.

█ Tashima Williams, Marsha Monterio, Mikhail Tsyrkin, and Wanda Small (collectively, the "Williams Plaintiffs") petition this Court to award them reasonable attorney's fees under 42 U.S.C. § 1988.

## I. BACKGROUND AND PROCEDURAL HISTORY

The Williams Plaintiffs brought suit in this Court in April 1993 against the Arlington, Danvers, and Hanover Public Housing Authorities (collectively, the "Authorities") and Henry Cisneros, Secretary of the Department of Housing and Urban Development (the "Department"). Their suit claimed that the Authorities, with the permission of the Department, were restricting the Williams Plaintiffs in the use of their Section 8 subsidies[1] to the city or town in which the issuing authority was located. The Williams Plaintiffs contended that this limitation on the use of their subsidies violated 42 U.S.C. § 1437f(r)(1) and Department regulations promulgated thereunder, violated Title VIII of the Civil Rights Act of 1968, deprived them of rights secured by federal law and the Constitution under color of state law in violation of 42 U.S.C. § 1983, and deprived them

of their constitutional right to travel. The heart and specifics of the Williams Plaintiffs' complaint are laid bare in great detail in this Court's earlier Memorandum and Order for Certification in this case. *Williams v. Hanover Housing Auth.*, 871 F.Supp. 527 (D.Mass. 1994). While such detail need not be repeated here, a brief summary is in order.

To expedite the resolution of the Williams Plaintiffs' claims, the parties agreed that the issues would be submitted for decision by this Court as a case stated. *See Continental Grain Co. v. Puerto Rico Maritime Shipping Auth.*, 972 F.2d 426, 429 n. 7 (1st Cir.1992) (noting that the submission of a matter to the court as a case stated increases judicial efficiency); *Boston Five Cents Savings Bank v. Department of Housing and Urban Dev.*, 768 F.2d 5, 12 (1st Cir.1985) (Breyer, C.J.) (same). The Court heard oral arguments from the parties on June 16, 1993 and thereafter issued its Memorandum and Order of Certification addressing the Williams Plaintiffs' claims.

The crux of the Williams Plaintiffs' complaint was that pursuant to 42 U.S.C. § 1437f and regulations promulgated thereunder, the Authorities are obligated to contract with landlords outside of their municipalities for the provision of low income housing where the failure to do so would result in the forfeiture of the subsidy by the beneficiary. The Authorities had been requiring recipients of the Section 8 subsidy who did not originally live within their political borders to use their subsidy within those borders for the first twelve months they received the subsidy in accordance with 42 U.S.C. § 1437f(r)(1), which states in relevant part:

> any family not living within the jurisdiction of the public housing agency at the time that such family applies for assistance from such agency shall, during the 12–month period beginning upon the receipt of any tenant-based rental assistance made available on behalf of the family, use such assistance to rent an eligible dwelling unit

---

1. "Section 8 subsidies" are subsidies granted under Section 8 of the United States Housing Act of 1937, as amended, which authorizes several housing programs. The specific subsidies involved in this case are granted under the Section 8 Rental Certificate & Voucher Programs. These programs are regulated by the Department in accordance with 42 U.S.C. § 1437(r). *See* 24 C.F.R. Parts 882, 887 (1995).

located *within the jurisdiction* served by such public housing agency.

42 U.S.C.A. § 1437f(r)(1) (West 1994) (emphasis supplied).[2] Section 1437f(r)(1) thus makes crucial the jurisdictional reach of the public housing agency. Nowhere, however, does federal statutory law dictate a jurisdictional definition for the public housing agencies. Instead, 24 C.F.R. § 882.103, a regulation promulgated by the Department to implement the Section 8 Housing Assistance Program, leaves it to the public housing agencies to determine their own jurisdictional reach by reference to state law when it states that public housing agencies may provide housing "in any area where [the public housing agency] determines that it is not legally barred from entering into Contracts." *See* 24 C.F.R. § 882.102 (1995).

The Authorities, operating in accordance with a legal opinion issued by the Massachusetts Office of Communities and Development (the "Agency"),[3] had been interpreting state law as legally barring them, and all other Massachusetts public housing authorities, from contracting for the provision of housing outside of their own municipalities without an agreement to do so with another public housing authority. This created a situation in which the Williams Plaintiffs, or other similarly situated subsidy recipients, could be deprived of the use of the subsidy if suitable housing could not be located within the issuing Authority's municipality.

The Williams Plaintiffs offered three theories as grounds for redress. First, they argued that the Department's Section 8 rules and regulations, as well as its handbook guidelines, mandate that the Authorities define their jurisdiction as broadly as possible and that the only permissible limitation on the Authorities' jurisdiction are those explicitly enumerated in the Department's handbook. This Court rejected that argument and determined that the Department's regu-

lations did not contain any mandate as to the jurisdictional reach of the Authorities, but rather left it to state and local law to determine the jurisdictional limits of the Authorities' power to contract for the provision of subsidized housing. In other words, the Authorities', or any other public housing agency's, jurisdiction is a matter of state, not federal, law.

Next, the Williams Plaintiffs argued that state law did not restrict the Authorities' jurisdiction to the confines of their political boundaries as the Agency had opined. In this regard, the Court agreed with the Williams Plaintiffs and held that, contrary to the opinion expressed by the Agency, "*under the laws of Massachusetts* a local public housing authority *is not legally barred* from contracting with landlords owning dwellings outside its political boundaries for Section 8 purposes and that the resulting contracts are 'within [its] jurisdiction.'" *Williams,* 871 F.Supp. at 530–31 (emphasis supplied). Finally, the Williams Plaintiffs argued that the restriction placed upon their use of the Section 8 vouchers was a violation of their constitutional right to travel.

Having concluded that state law allowed the Authorities to contract for housing outside of their own municipal boundaries, this Court found it unnecessary to address the Williams Plaintiffs' constitutional claims. Moreover, this Court, realizing that an interpretation of state law was central to the resolution of this matter, certified the issue to the Massachusetts Supreme Judicial Court for further determination under the provisions of Sup.Jud.Ct.R. 1:03.

The Department accepted this Court's ruling as an authoritative declaration of state law and, in turn, required the Authorities to act accordingly and contract for housing beyond their political boundaries if necessary, which they promptly did. Thus, before this

---

**2.** A "public housing agency" as used in the statute, refers to "[a]ny State, county, municipality or other governmental entity or public body ... which is authorized to engage in or assist in the development or operation of housing for low-income Families." 24 C.F.R. 882.102(b) (1995). As such, each of the Authorities constitutes a "public housing agency" as so used.

**3.** The Department had originally requested that the Agency seek such an opinion letter from the Massachusetts Attorney General's office in an attempt to resolve a conflict among the local housing authorities as to their jurisdictional reach. In response, the Agency instead issued its own opinion letter.

certified question was docketed with the Supreme Judicial Court, this action was dismissed as moot since further determination by the Supreme Judicial Court was unnecessary given the parties' compliance with this Court's interpretation of state law.

Their suit thus having come to an end, the Williams Plaintiffs seek to have the Arlington and Danvers Housing Authorities pay their attorney's fees under the provisions of 42 U.S.C. § 1988(b).[4]

## II.  ANALYSIS

■  For this Court to exercise its discretion and award a reasonable attorney's fee to the Williams Plaintiffs, they must be prevailing parties in "any action or proceeding to enforce a provision of [42 U.S.C.] sections 1981, 1981a, 1982, 1983, 1985 [or] 1986." 42 U.S.C.A. § 1988(b) (West 1994). Here, the Williams Plaintiffs claimed, inter alia, they had been deprived of "rights secured by federal statutes, regulations and the United States Constitution ... in violation of 42 U.S.C. § 1983." Plaintiffs' Complaint at ¶ 69. Now the Williams Plaintiffs claim they have prevailed in their § 1983 action and are therefore entitled to attorney's fees under § 1988(b).

It is important to note what this Court's earlier opinion did not say. This Court did not say that the Williams Plaintiffs had a right under federal law to have the Authorities contract outside of their political boundaries for Section 8 housing. Rather, this Court explicitly concluded that federal law

leaves to the states the issue of the jurisdictional reach of local public housing authorities. Williams, 871 F.Supp. at 532. The entire import of this Court's legal determination was that state law allowed the Authorities to contract outside of their political boundaries; not that federal law required them to do so. Consequently, the Williams Plaintiffs have not vindicated a federal right and are thus not entitled to the award of attorney's fees.

■  To make the record complete should the Williams Plaintiffs choose to appeal this decision, this Court also concludes that it would refrain from exercising its discretion to award attorney's fees in this case even were it to conclude that they had prevailed on a federal right.

As the language of section 1988(b) makes plain, the award of attorney's fees is left to the discretion of this Court. See 42 U.S.C.A. § 1988(b) (West 1994). While the Supreme Court has held that a prevailing plaintiff "should ordinarily recover an attorney's fee," Newman v. Piggie Park Enterprises, 390 U.S. 400, 402, 88 S.Ct. 964, 966, 19 L.Ed.2d 1263 (1968), it also stated that such an award should not be made if "special circumstance would render such an award unjust." Id. This case presents such special circumstances.

In interpreting their jurisdiction as prohibiting their contracting for housing outside of their town boundaries, the Authorities acted in good faith and appear to have made significant efforts to assist the Williams Plaintiffs

---

4. The Williams Plaintiffs press their claim for attorney's fees solely against the Arlington and Danvers Housing Authorities and exclude both Secretary Cisneros and the Hanover Housing Authority from their request. They apparently make a distinction among the Defendants based upon the amount of resistance each of them presented to their claims.

They do not seek fees from the Hanover Housing Authority because it allowed Tashima Williams to use her voucher outside of Hanover almost immediately after this case was filed. Plaintiffs' Mem. at p. 3 n. 4. Secretary Cisneros is excluded from the Williams Plaintiffs' petition for attorney's fees because they concede that the Department only defended against that portion of their claim that alleged it had acted arbitrarily and capriciously, and upon which it ultimately prevailed. Id.

As to the Arlington and Danvers Housing Authorities, the Williams Plaintiffs allege that they "opposed [the Williams Plaintiffs'] contentions until the last day of the litigation." Plaintiffs' Mem. at p. 3. The Danvers and Arlington Housing Authorities dispute this characterization. The Danvers Housing Authority states it allowed both Marsha Monterio and Mikhail Tsyrkin to use their vouchers in other communities, though Monterio eventually returned her voucher unused, and the Arlington Housing Authority claims that Wanda Small informed them that she wished to stay in Arlington and lives there to this day. Defendant's Mem. at p. 2. This Court finds it unnecessary to resolve this dispute in coming to its determination on the issue of attorney's fees.

in securing housing consistent with their interpretation of the restriction on their jurisdiction. While good faith alone on the part of the Authorities is insufficient to deny the Williams Plaintiffs attorney's fees, *see Albemarle Paper Co. v. Moody,* 422 U.S. 405, 95 S.Ct. 2362, 45 L.Ed.2d 280 (1975), in this case there is something more.

In interpreting Massachusetts law as they did, the Authorities were not staking out an independent policy of their own. Rather, they were quite reasonably acting in accordance with the interpretation of Massachusetts law issued by the Agency. Given that the Agency issued its opinion to resolve a dispute among the local housing authorities as to their jurisdiction, it would be unjust to award attorney's fees against the Authorities for conforming their policies to the Agency's opinion letter. While the Court believes that the Williams Plaintiffs suit had some salutary effect, in this case a balancing of the equities weighs against the award of attorney's fees. This is particularly so given the relatively arcane point of state law upon which the Williams Plaintiffs prevailed.

### III.   *CONCLUSION*

For the reasons set forth in this Memorandum and Order, the Williams Plaintiffs' motion for fees is hereby *DENIED.*